THE STATE OF NEVADA, Appellant, v. ROBERT JOHN McKELLIPS, Respondent.

No. 37886

July 18, 2002

49 P.3d 655

*Frankie Sue Del Papa*, Attorney General, Carson City; *Richard A. Gammick*, District Attorney, and *Terrence P. McCarthy*, Deputy District Attorney, Washoe County, for Appellant.

*Law Offices of Scott N. Freeman, P.C.,* Reno, for Respondent.

## OPINION

*Per Curiam:*

Robert John McKellips was charged with four counts of driving under the influence. After a preliminary hearing, McKellips filed

a motion to suppress the results of the urine and blood tests that showed he had been smoking marijuana. In his motion, McKellips argued that both his consent to provide the samples and the actual collection of the samples occurred more than sixty minutes after his detention in violation of NRS 171.123, the temporary detention statute. The district court granted McKellips' motion to suppress. The State appeals from the district court's order, arguing that substantial evidence does not support the district court's finding that McKellips was detained at the accident scene, and even assuming that he was detained, the detention ripened into a de facto arrest that was supported by probable cause. We conclude that substantial evidence supports the district court's finding that McKellips was detained. However, we reverse the district court's order granting McKellips' motion to suppress because we hold that McKellips' detention ripened into a de facto arrest and was supported by probable cause.

## FACTS

On July 29, 2000, at 2:53 p.m., Officer John McCauley of the Reno Police Department received a dispatch call regarding an accident at the intersection of Neil Road and McCarran Boulevard. Officer McCauley arrived within minutes after receiving the dispatch call and found a major accident in the middle of the intersection involving a green Chevrolet pick-up and a white four-door sedan. The accident resulted in the death of a mother and her infant.

The driver of the green pick-up, McKellips, approached Officer McCauley shortly after Officer McCauley arrived at the scene (sometime between 3:03 p.m. and 3:08 p.m.). McKellips could not produce his Nevada driver's license to Officer McCauley because, as McKellips explained, it was suspended; but, he instead produced a Nevada identification card. McKellips told Officer McCauley that he ran the red light because he thought that he could make it and that the light changed directly from green to red, skipping yellow.

Officer McCauley then handed McKellips an accident statement form to complete. Officer McCauley remained with McKellips for approximately fifteen minutes until Officer Sistare arrived, at which time McKellips was placed in the back seat of Officer Sistare's police car where he continued filling out the accident statement form.

Around 3:30 p.m., Officer Kevin McMillin arrived at the accident scene. Officer McMillin approached McKellips, who was still seated in the back of the patrol car with the doors closed. Officer McMillin asked McKellips if he had been drinking or had taken any drugs, to which McKellips responded in the negative.

Officer McMillin then had McKellips perform a Horizontal Gaze Nystagmus (HGN) test. Officer McMillin placed McKellips back in the patrol car, but due to the heat he left the door open, though some officers were standing next to the door.

Officer Lanny Marsh received a call at his home at 3:42 p.m. requesting that he respond to the accident scene in his capacity as a DUI enforcement officer and member of the Major Accident Investigation Team (MAIT). He arrived at the accident scene at 4:15 p.m. in his personal car. Approximately ten minutes after he arrived, he approached McKellips, who was still in the patrol car with the door closed. After Officer Marsh advised him that he was not under arrest, McKellips told Officer Marsh what had happened.

Officer Marsh performed two tests on McKellips at the scene. First, he performed an HGN test on McKellips, which McKellips failed. Second, at 4:28 p.m. McKellips submitted to a preliminary breath test, and that test registered zero. During this time, Officer Marsh noted that McKellips showed no signs of being under the influence of either alcohol or a controlled substance.

After Officer Marsh again informed McKellips that he was not under arrest, Officer Marsh asked him if he would submit to blood and urine testing at the police station. McKellips consented. As a result, at 4:36 p.m. a phlebotomist was contacted and requested to proceed to the police station to obtain blood samples from McKellips. After the phlebotomist was contacted, Officer Marsh escorted McKellips to the police station. The phlebotomist arrived at 5:00 p.m. and drew McKellips' blood three times. McKellips also provided one urine sample.

Meanwhile, upon calling the records bureau of the Reno Police Department, Officer Marsh was advised that McKellips' driver's license had been revoked. Officer Marsh also conducted a warrants check on McKellips, and he found that an outstanding misdemeanor warrant had been issued for McKellips' arrest. At 6:45 p.m., Officer Marsh arrested McKellips for running a red light and driving with a revoked license. The outstanding warrant was later added to the booking charge. After the arrest, the blood and urine test results showed that McKellips had marijuana in his system.

The State charged McKellips by complaint with two counts of driving while under the influence of a prohibited substance causing death, one count of driving under the influence of a prohibited substance causing substantial bodily harm, and one count of using and/or being under the influence of a controlled substance. The justice court conducted a preliminary examination and found probable cause to hold McKellips over for trial on all charges.

McKellips filed a motion to suppress the results of the urine and blood tests, arguing that they were taken after the sixty-minute time limit under NRS 171.123, the temporary detention statute. After an evidentiary hearing, the district court granted McKellips' motion to suppress. In doing so, the district court found that McKellips had been detained sometime between 3:00 p.m. and 3:10 p.m., the time when he had been directed to the police car to write his statement. The district court noted that Officer McCauley had testified that he subjectively did not believe that McKellips was free to leave at that particular point. The district court also found that McKellips' consent was obtained no later than 4:36 p.m. Based on these calculations, the district court concluded that the State failed to prove by a preponderance of the evidence that McKellips' detention did not exceed one hour prior to 4:36 p.m. The State appealed.

## DISCUSSION

The State first argues that the district court erred in its conclusion that McKellips was detained because the district court improperly considered and relied on the subjective intent of the police officers that McKellips was not free to leave, even though that intent was not communicated to McKellips. We note that contrary to McKellips' assertions, the State properly preserved this argument because the State made the same argument below.

This court will uphold the district court's decision regarding suppression unless this court is "left with the definite and firm conviction that a mistake has been committed."[1] " '[F]indings of fact in a suppression hearing will not be disturbed on appeal if supported by substantial evidence.' "[2] "Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion."[3]

The United States Supreme Court has clearly articulated the appropriate test to be applied in determining whether a seizure or a detention has occurred. "The test provides that the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person

---

[1]*United States v. Gypsum Co.*, 333 U.S. 364, 395 (1948), *quoted in State v. Harnisch*, 113 Nev. 214, 219, 931 P.2d 1359, 1363 (1997).

[2]*Harnisch*, 113 Nev. at 219, 931 P.2d at 1363 (quoting *State v. Miller*, 110 Nev. 690, 694, 877 P.2d 1044, 1047 (1994)).

[3]*Bopp v. Lino*, 110 Nev. 1246, 1249, 885 P.2d 559, 561 (1994).

would have believed that he was not free to leave.' ''[4] As the test is an objective standard—looking to a reasonable person's interpretation of the situation in question—it allows law enforcement to consistently determine in advance whether their conduct implicates the Fourth Amendment.[5] The Supreme Court explained further, "This 'reasonable person' standard also ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached."[6]

The Supreme Court has noted that "the subjective intent of the officers is relevant to an assessment of the Fourth Amendment implications of police conduct only to the extent that that intent has been conveyed to the person confronted."[7] On this note, the State contends that the district court erred when it considered the officers' testimonies that they believed that McKellips was not free to leave, which was not communicated to McKellips. We note that it may have been error for the district court to consider the officers' subjective intent because it appears that their intent was not conveyed to McKellips; however, we conclude that it was harmless error in light of the other objective factors the district court considered.

Even assuming that the district court erroneously considered the officers' subjective intent, we conclude that substantial evidence supports the district court's finding that McKellips was detained. Officer McCauley remained with McKellips for approximately fifteen minutes until two other officers arrived, at which time McKellips was directed to and placed in the back of Officer Sistare's police car to write his statement. McKellips was seated in the back of the police car for over an hour. While McKellips was seated in the back of the police car, Officer Marsh asked McKellips several questions about the accident and about whether McKellips had been drinking or had taken any drugs. Even though Officer Marsh twice communicated to McKellips that he was not under arrest, substantial evidence supports the district court's findings that McKellips was detained because a reasonable person in McKellips' position would not have believed he was free to leave.

---

[4]*Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.)); *see also State v. Stinnett*, 104 Nev. 398, 401, 760 P.2d 124, 126 (1988) (applying the *Chesternut* test).

[5]*Chesternut*, 486 U.S. at 574.

[6]*Id.*

[7]*Id.* at 575 n.7.

The district court granted McKellips' motion to suppress because it found that his detention exceeded sixty minutes in violation of NRS 171.123, the temporary detention statute. The State contends that McKellips' detention simply ripened into a de facto arrest and that the district court should have continued its analysis to determine whether the de facto arrest was supported by probable cause. We agree.

Whether a seizure ripens into a de facto arrest is a question that is reviewed de novo.[8] "There is 'no bright-line [rule] for determining when [a detention] crosses the line and becomes an arrest.'"[9] The Supreme Court noted that this determination "may in some instances create difficult line-drawing problems in distinguishing [a detention] from a *de facto* arrest."[10]

This court has noted that "in determining whether detention has ripened into arrest, '[t]here has been an arrest if, under the circumstances, a reasonable person would conclude that he was not free to leave after brief questioning.'"[11] Applying this test, the Ninth Circuit has held that a detention does not transform into a de facto arrest merely because a defendant is placed in a police car.[12] However, if the detention in the back of a police car exceeds permissible temporary detention limits and becomes unreasonable, then the detention will become an arrest for which probable cause is necessary.[13]

We have previously noted that when a temporary detention becomes excessive in length, scope, and purpose, the detention ripens into an arrest for which probable cause is required.[14] Notwithstanding this test, the Nevada Legislature has set forth a rule that a sixty-minute detention is per se unreasonable. NRS 171.123 states in pertinent part:

> 1. Any peace officer may detain any person whom the officer encounters under circumstances which reasonably

---

[8]*U.S. v. Torres-Sanchez*, 83 F.3d 1123, 1127 (9th Cir. 1996).

[9]*Id.* (quoting *U.S. v. Hatfield*, 815 F.2d 1068, 1070 (6th Cir. 1987)).

[10]*United States v. Sharpe*, 470 U.S. 675, 685 (1985).

[11]*Arterburn v. State*, 111 Nev. 1121, 1125-26, 901 P.2d 668, 670 (1995) (quoting *U.S. v. Del Vizo*, 918 F.2d 821, 824 (9th Cir. 1990)).

[12]*U.S. v. Baron*, 860 F.2d 911, 915 (9th Cir. 1988).

[13]*See United States v. Chamberlin*, 644 F.2d 1262, 1266-67 (9th Cir. 1980) (holding that a twenty-minute detention in the back seat of a patrol car constituted an arrest).

[14]*See Arterburn*, 111 Nev. at 1125, 901 P.2d at 670; *see also Rice v. State*, 113 Nev. 425, 429, 936 P.2d 319, 321 (1997) (noting that if probable cause matures, the detention can ripen into an arrest).

indicate that the person has committed, is committing or is about to commit a crime.

. . . .

4. A person must not be detained longer than is reasonably necessary to effect the purposes of this section, and in no event longer than 60 minutes. . . . unless the person is arrested.

Accordingly, under NRS 171.123, once an individual has been detained, the officer has sixty minutes to either release or arrest the individual. If the individual is not released after sixty minutes, then according to the legislature the detention becomes unreasonable per se,[15] and thus the detention ripens into an arrest for which probable cause is necessary. Because the district court concluded that McKellips' detention exceeded the sixty-minute time limit, we conclude that the detention ripened into an arrest for which probable cause was necessary.

Because McKellips' detention ripened into a de facto arrest, we must now determine whether his arrest was supported by probable cause. Probable cause to arrest "exists when police have reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution to believe that [a crime] has been . . . committed by the person to be arrested."[16] McKellips contends that probable cause did not exist because Officer Marsh testified that he did not believe that he had probable cause to arrest McKellips at the scene. However, the Supreme Court has noted that "the fact that the officers did not believe there was probable cause and proceeded on a [temporary detention] rationale would not foreclose the State from justifying [a person's] custody by proving probable cause."[17]

We conclude that the police officers had probable cause to arrest McKellips because he was driving his car with a suspended license. McKellips voluntarily approached Officer McCauley (sometime between 3:03 p.m. and 3:08 p.m.), and when Officer McCauley requested McKellips' driver's license, McKellips produced a Nevada identification card, explaining that his license had

---

[15]*See Barrios-Lomeli v. State*, 114 Nev. 779, 780, 961 P.2d 750, 750 (1998) (stating that under NRS 171.123, a detention longer than sixty minutes is unreasonable per se according to the clear intent of the legislature), *denying reh'g* 113 Nev. 952, 944 P.2d 791 (1997).

[16]*Doleman v. State*, 107 Nev. 409, 413, 812 P.2d 1287, 1289 (1991).

[17]*Florida v. Royer*, 460 U.S. 491, 507 (1983).

been suspended. NRS 484.791(1)(g) allows a police officer to arrest a person without a warrant if the officer has reasonable cause to believe that the person has been driving with a suspended license. McKellips admitted to Officer McCauley that he had been driving with a suspended license, thus probable cause was present to arrest him on that offense.

## CONCLUSION

We hold that once a detention exceeds the sixty-minute time limit under NRS 171.123, the detention ripens into a de facto arrest for which probable cause is necessary. Thus, having concluded that probable cause supported McKellips' de facto arrest, we reverse the district court's order granting McKellips' motion to suppress.