An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

DAVID ANTONIO TURCIOS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 64918

**FILED**

SEP 1 8 2015

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of four counts of sexual assault with a minor under 14 and 11 counts of lewdness with a minor under 14. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

David Turcios was detained after P.B., his girlfriend's 12-year-old daughter, alleged that he sexually assaulted her. He was charged with various counts of sexual assault of a minor under 14 and lewdness with a child under 14. Following trial, the jury returned guilty verdicts on all charges. The district court subsequently sentenced Turcios to one concurrent life term with parole eligibility after 35 years and three consecutive life terms with parole eligibility after 35 years for the four sexual assault charges. The court sentenced Turcios to 11 concurrent life sentences with parole eligibility after 10 years for the lewdness charges.[1]

---

[1]In addition to running the sentences for all 11 of the lewdness convictions concurrently, the district court ran the sentence for the first lewdness conviction concurrent to the last sexual assault conviction. Therefore, Turcios will be eligible for parole after serving a minimum of 105 years, or 35 years for each of the three consecutive sentences on the sexual assault convictions.

SUPREME COURT
OF
NEVADA

(O) 1947A

15-28302

*Self-representation*

Turcios argues that the district court abused its discretion when it granted his motion for self-representation. He claims he decided to represent himself under duress due to a conflict with the public defender, although he does not explain the substance of this alleged conflict. He also argues his decision to waive counsel was neither knowing nor intelligent. We disagree.

A defendant has a constitutional right to self-representation. *See Faretta v. California*, 422 U.S. 806, 807 (1975); *see also* Nev. Const. art. 1, § 8. On review, this court defers to the trial court's decision. *Graves v. State*, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996) (noting that "[t]hrough face-to-face interaction in the courtroom, the trial judges are much more competent to judge a defendant's understanding than this court"). "In order for a defendant's waiver of the right to counsel to withstand constitutional scrutiny, the judge need only be convinced that the defendant made his decision with a clear comprehension of the attendant risks." *Id.*

This court looks at "the facts and circumstances of each case, including the defendant's background, experience, and conduct" in assessing the waiver of counsel. *Hooks v. State*, 124 Nev. 48, 54, 176 P.3d 1081, 1084 (2008). For a waiver to be effective, this court has held that it must be "knowingly, intelligently, and voluntarily" made. *Id.* at 53-54, 176 P.3d at 1084. Trial courts must examine whether the defendant is competent "to choose self-representation; not his ability to adequately defend himself." *Vanisi v. State*, 117 Nev. 330, 341, 22 P.3d 1164, 1172 (2001) (internal quotations omitted).

The trial court record reveals that Turcios clearly did not have the requisite skill to competently defend himself at trial. However, this court will not overturn a district court's decision allowing self-representation based on the defendant's performance at trial. *See id.* The relevant concern is whether the defendant waived that right freely, intelligently, and voluntarily. *Hooks*, 124 Nev. at 53-54, 176 P.3d at 1084.

We conclude that he did. First, the record shows that Turcios's decision to represent himself was not based solely on an unresolved conflict with his public defender. Instead, the record shows that Turcios also did not want a long continuance, that he wanted to bring certain issues to the court's attention, and that he believed he would be acquitted. Second, despite the complexity of the case, the district court did not abuse its discretion in granting Turcios's request. Turcios informed the court that he could read and write English well, had sufficient education to understand the proceedings, and knew the State's burden of proof. The district court also repeatedly admonished Turcios that he could jeopardize his case by representing himself, but Turcios said that he nonetheless wished to waive the right to counsel. Third, the timeliness of his request does not invalidate the waiver. Although Turcios now claims that the court should have denied his request to represent himself because he had just a little more than one week to prepare his defense, this argument is not persuasive. Turcios sought to represent himself, in part, to prevent additional trial delays and he fails to explain how his defense would have been enhanced had he been allowed additional time to prepare. Accordingly, we conclude that the district court did not abuse its discretion when it granted Turcios's motion to waive his right to counsel.

*Admissibility of statement to police*

Turcios argues that the district court erred when it admitted his statement to police at trial. He first argues that his statement was inadmissible because he did not knowingly and intelligently waive his *Miranda* rights. *See Miranda v. Arizona*, 384 U.S. 436 (1966). He claims that the police ambiguously responded when he said he did not understand the warnings and that the detective's responses undercut the warnings and their magnitude. Next, Turcios argues that his statement was inadmissible because police used coercive tactics to make him confess. We will address the validity of the *Miranda* waiver and the voluntariness of the confession in turn.

*Validity of Miranda waiver*

Whether a defendant knowingly and intelligently waived his or her *Miranda* rights "is a question of fact, which is reviewed for clear error. However, the question of whether a waiver is voluntary is a mixed question of fact and law that is properly reviewed de novo." *Mendoza v. State*, 122 Nev. 267, 276, 130 P.3d 176, 181 (2006).

For a defendant's *Miranda* waiver to be effective, the waiver must be "voluntary, knowing, and intelligent." *Id.* For the statement to be admissible at trial, the State must show that the defendant waived his or rights by a preponderance of the evidence. *See Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010). The State must also establish that law enforcement informed the defendant of his or her *Miranda* rights, the defendant understood the warnings, and the defendant then provided admissions without coercion. *Id.* at 384-85. But if law enforcement "threatened, tricked, or cajoled" the defendant into a waiver, it is not voluntary. *Miranda*, 384 U.S. at 476.

In the instant case, a police detective testified that he read the *Miranda* warnings to Turcios directly from a card prepared by the police department. The detective also testified that Turcios initially had questions about the language in the warnings, but the detective said he explained them and Turcios then confirmed he understood and agreed to continue speaking. We are not persuaded by Turcios's argument that his waiver was not voluntary because the detective inappropriately suggested that only some of the statements, not all of the statements, could be used against him. During the interrogation, Turcios said to the detective, "So if I speak, everything will be against me or, or will be used against me." The detective responded, "It can be. It depends on what you tell me." The detective's response was not coercive; it was both straightforward and honest. The response also did not undermine the significance of the warnings. Thus, we conclude that Turcios knowingly, intelligently, and voluntarily waived his *Miranda* rights.

### Voluntariness of confession

"[V]oluntariness determinations present mixed questions of law and fact subject to this court's de novo review." *Rosky v. State*, 121 Nev. 184, 190, 111 P.3d 690, 694 (2005). This court will not impose its judgment in place of the district court's so long as the district court's ruling is based on substantial evidence. *Steese v. State*, 114 Nev. 479, 488, 960 P.2d 321, 327 (1998). "Substantial evidence is that which a reasonable mind might consider adequate to support a conclusion." *Id.* "[F]indings of fact in a suppression hearing will not be disturbed on appeal if supported by substantial evidence." *State v. McKellips*, 118 Nev. 465, 469, 49 P.3d 655, 658-59 (2002) (alteration in original) (internal quotations omitted).

A confession is only admissible as evidence at an accused's trial "if it is made freely, voluntarily, and without compulsion or inducement." *Franklin v. State*, 96 Nev. 417, 421, 610 P.2d 732, 734 (1980). The defendant's Fourteenth Amendment right to due process of law is violated "if his conviction is based, in whole or in part, upon an involuntary confession, . . . even if there is ample evidence aside from the confession to support the conviction." *Passama v. State*, 103 Nev. 212, 213, 735 P.2d 321, 322 (1987). Voluntariness is determined by "'the totality of the circumstances.'" *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960) (quoting *Fikes v. Alabama*, 352 U.S. 191, 197 (1957)). Specifically, we will look to the *Passama* factors, *see Passama*, 103 Nev. 212, 735 P.2d 321, and whether the police used intrinsic or extrinsic falsehoods to secure the confession, *see Sheriff, Washoe Cnty. v. Bessey*, 112 Nev. 322, 914 P.2d 618 (1996).

### *Passama factors*

This court has held that "[t]he question [of voluntariness] in each case is whether the defendant's will was overborne when he confessed." *Passama*, 103 Nev. at 214, 735 P.2d at 323. The trial court must consider factors such as "the youth of the accused; his lack of education or his low intelligence; the lack of any advice of constitutional rights; the length of detention; the repeated and prolonged nature of questioning; and the use of physical punishment such as the deprivation of food or sleep." *Id.*

Based on *Passama*, we conclude that the totality of the circumstances shows that the police did not coerce Turcios during the interrogation.

First, *Passama* requires that the court examine "the youth of the accused." *Id.* The record shows that Turcios was 46-years-old at the time he spoke with police. Therefore, the police did not coerce Turcios by taking advantage of his youth.

Second, the court considers the education and intelligence of the accused. *Id.* The record shows that Turcios progressed to the ninth grade in school and the record does not indicate that his intellect was below average. Turcios also subsequently informed the court that he had sufficient education to understand the proceedings. Therefore, the police did not overbear Turcios by taking advantage of him through a lack of education or intelligence.

Third, the court assesses whether the accused was advised of his constitutional rights. *Id.* As we explained previously, Turcios received his *Miranda* warnings, indicated that he understood the warnings, and expressly waived his rights. Therefore, the police did not 'overbear' Turcios's will by failing to advise him of his constitutional rights.

Fourth, the court looks at "the length of detention." *Id.* The detective testified that police contacted Turcios at his residence and then transported him to police headquarters for questioning. Nothing in the record suggests that Turcios was detained between the times that police detained him at his home and transported him to the police station. The record also does not suggest that Turcios was detained between the time he arrived at the police headquarters and the time the interrogation began. Therefore, the police did not overbear Turcios's will through a lengthy detention.

Fifth, the court must determine whether the questioning was "repeated and prolonged." *Id.* Police detectives questioned Turcios on

SUPREME COURT
OF
NEVADA

(O) 1947A

only one occasion, so the questioning was not repeated. Also, the transcript of the voluntary statement shows that Turcios's interrogation began at 8:53 p.m. and concluded at 9:56 p.m.–just an hour and three minutes later. Therefore, this was not a prolonged interrogation.

Lastly, the court must decide whether police inflicted "physical punishment such as the deprivation of food or sleep" upon the accused to secure a confession. *Id.* The record does not reflect that police mistreated Turcios; in fact, Turcios said that the detectives were polite and respectful to him during the entire interview and that they did not threaten him in any way. Therefore, the police did not use physical punishment to overbear Turcios's will and coerce a statement.

Accordingly, Turcios's will was not overborne when he made his statement to the police.

*Police deception*

This court has held that trial courts should also consider police deception in evaluating the voluntariness of a confession. *Sheriff, Washoe Cnty. v. Bessey*, 112 Nev. 322, 325, 914 P.2d 618, 619 (1996). Police deception does not automatically render a confession involuntary. *Id.* Police subterfuge is permissible if "the methods used are not of a type reasonably likely to procure an untrue statement." *Id.* at 325, 914 P.2d at 620. This court has distinguished between intrinsic falsehoods and extrinsic falsehoods. *Id.* at 325-26, 914 P.2d at 620. Intrinsic falsehoods imply the existence of implicating evidence and are more likely to secure a truthful confession from a defendant. *Id.* at 326, 914 P.2d at 620. Extrinsic falsehoods involve issues that are collateral to the crime and are more likely to overbear a defendant's will and secure a false confession or "a confession regardless of guilt." *Id.*; *see also Lynumn v. Illinois*, 372 U.S.

528, 534 (1963) (concluding that a confession was coerced when police threated a defendant that "state financial aid for her infant children would be cut off, and her children taken from her, if she did not 'cooperate'"). Deceptions that are likely to produce a false confession are not permissible and render a confession involuntary. *Bessey*, 112 Nev. at 326, 914 P.3d at 620.[2]

---

[2]In *Bessey*, we provided examples of both intrinsic and extrinsic falsehoods:

> Examples of intrinsic falsehoods would include misrepresentations regarding the existence of incriminating evidence such as placement of the defendant's vehicle at the crime scene, physical evidence linked to the victim in the defendant's car, presence of defendant's fingerprints at the crime scene or in the getaway car, positive identification by reliable eyewitnesses, and identification of the defendant's semen in the victim or at the crime scene. Examples of extrinsic falsehoods of a type reasonably likely to procure an untrue statement or to influence an accused to make a confession regardless of guilt would include the following: assurances of divine salvation upon confession, promises of mental health treatment in exchange for confession, assurances of more favorable treatment rather than incarceration in exchange for confession, misrepresenting the consequences of a particular conviction, representation that welfare benefits would be withdrawn or children taken away unless there is a confession or suggestion of harm or benefit to someone.

112 Nev. at 326, 914 P.2d at 620-21 (emphasis omitted) (citation omitted).

Turcios cites three specific lies the police used to secure his confession: (1) he needed to confess in order for the judge and jury to hear his side of the story; (2) he needed to confess before the police received the results of the DNA tests; and (3) he needed to confess, like the co-defendant in a hypothetical scenario that detectives posed, so that the court would be lenient with him. He claims that these deceptions tricked him into confessing and that his statement was therefore involuntary and inadmissible. We are not persuaded by this argument.

Turcios first complains that the detectives implied that a judge and jury would not hear his side of the story unless he confessed. However, this implication is not an extrinsic falsehood which constitutes coercion. By implying that a confession would allow his side of the story to be heard, police sought to induce a truthful confession—not a confession regardless of his guilt. *Cf. Bessey*, 112 Nev. at 326, 914 P.2d at 620. We conclude that the police employed a permissible tactic when they encouraged Turcios to tell his side of the story so that a judge and jury would not solely rely upon the victim's allegations. *See id.* at 325-26, 914 P.2d at 620. The implication of the detectives' statement focused Turcios's attention on the intrinsic facts of the victim's allegations; the implication did not divert Turcios's attention to issues extrinsic to the allegations.

Next, Turcios complains that false representations about DNA evidence and the need to confess before the results were received constitute extrinsic falsehoods and unlawfully coerced his confession. Turcios is incorrect. This court has determined that misrepresentations about DNA evidence are intrinsic falsehoods and permissible in obtaining a confession. *Id.* at 326, 914 P.2d at 620. Telling Turcios that DNA evidence existed and that the results of DNA tests would prove whether he

touched the victim and with which parts of his body he touched her would only motivate Turcios to confess if he had indeed committed the alleged acts. The threat of DNA evidence and the need to confess before police received results would not motivate Turcios to make a false admission, especially after the detective told Turcios that "no two people in the history of human beings have had the same DNA." The threat of conclusive DNA evidence would cause Turcios to consider "his own beliefs regarding his actual guilt or innocence, his moral sense of right and wrong, and his judgment regarding the likelihood that the police had garnered enough valid evidence linking him to the crime." *See Holland v. McGinnis*, 963 F.2d 1044, 1051 (7th Cir. 1992). Additionally, telling Turcios that he needed to confess before they received the results is an intrinsic falsehood, not an extrinsic, because the statement was not collateral to the crime or one that was "likely to procure an untrue statement or to influence an accused to make a confession regardless of guilt." *See Bessey*, 112 Nev. at 326, 914 P.2d at 620. Had he not committed the crime and believed that the condemning evidence was forthcoming, the deception would not have motivated him to confess. Accordingly, we conclude the detectives' use of intrinsic falsehoods regarding DNA evidence did not render Turcios's confessions involuntary or inadmissible.

Lastly, Turcios complains that the police deceived him by suggesting that the court would be lenient if he confessed. A detective posed a hypothetical scenario to Turcios in which video surveillance at a convenience store shows two men stealing milk. The first man claims that the court cannot prove he committed the crime. The second individual confesses, explains he did not have the money to purchase the milk for his

baby, and expresses remorse. The detective then asked Turcios which of the two thieves, the one who is defiant or the one who is remorseful, a court would likely treat better. In response to the detective's question, Turcios asked if they would be merciful with him if he admitted guilt. Rather than telling Turcios that an admission would lead to favorable treatment, the detective corrected Turcios and said that this was his opportunity to explain whether the victim exaggerated or minimized the actual crimes committed. However, the record does not reflect that the police made any promises of leniency to Turcios, explicit or implicit. Thus, we do not believe that the hypothetical scenario was deceitful or that it rendered the confession involuntary or inadmissible.

Because all of the misrepresentations that Turcios complains of are either intrinsic falsehoods, which we have determined are permissible, *see Bessey*, 112 Nev. at 325-26, 914 P.2d at 620, or are not falsehoods at all, we conclude that the police did not coerce Turcios's statement and that the district court correctly concluded that the statement was admissible.

Accordingly, we find that Turcios' statement was voluntary and that the detectives' use of deception did not overbear his will.

*Other arguments*

*Prosecutorial misconduct*

Turcios alleges that several incidences of prosecutorial misconduct prejudiced him and denied his right to due process. Prosecutorial misconduct occurs when "a prosecutor's statements so infected the proceedings with unfairness as to make the results a denial of due process." *Thomas v. State*, 120 Nev. 37, 47-48, 83 P.3d 818, 825 (2004). "Reversal, however, is unnecessary if the prosecutor's [comments]

are harmless beyond a reasonable doubt." *Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005).

*Comments regarding P.B.'s demeanor and the heinous nature of the crime*

Turcios claims that the prosecutors' comments about P.B.'s demeanor on the witness stand and the heinousness of the crime inflamed the jurors and prejudiced them against him. The prosecutor merely related her observations of the victim and this does not constitute misconduct. Likewise, the prosecutor's statement about the heinous nature of sexual assault of a minor under 14 can be objectively verified by reading NRS 200.366(2). Accordingly, a new trial is not warranted because the statements did not "infect[ ] the proceedings with unfairness." *Thomas*, 120 at 47; 83 P.3d at 825; *see also Anderson*, 121 Nev. at 516, 118 P.3d at 187 (finding prosecutorial misconduct sufficiently prejudicial to warrant new trial).

*Bolstering witness testimony*

Turcios also argues that the State impermissibly bolstered P.B.'s testimony. We agree that the State impermissibly bolstered the victim's testimony. The State erred by describing one of P.B.'s friends, who testified at trial for the State, as a "hero," a "knight in shining armor," and a "36-year-old trapped in a 14-year-old's body." *See DeChant v. State*, 116 Nev. 918, 926, 10 P.3d 108, 113 (2000) (concluding the prosecutor committed reversible error by paraphrasing a witness's stricken testimony, that the defendant's claim of a mob hit, was a "fairytale"). The State also erred by eliciting testimony from this witness that she acted appropriately by telling the school dean about P.B.'s sexual abuse and P.B.'s trustworthy nature. However, we conclude that these errors were harmless. *See* NRS 178.598. The State further erred when it elicited

testimony from McIlvaine, P.B.'s former school counselor, that P.B. was good person, but this error was not plain. *See Patterson v. State*, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995) (holding that this court's review is generally precluded when a party fails to object at trial but it may review for plain error, which occurs when the error is "so unmistakable that it reveals itself by a casual inspection of the record" (internal citation omitted)). Consequently, reversal is not warranted.

*Leading witnesses during direct examination*

Turcios argues that the State committed misconduct by asking P.B. and her friend from school leading questions during direct examination. We conclude that admission of the leading questions was not plainly erroneous from a casual inspection of the record. *See id.* *See also Anderson v. Berrum*, 36 Nev. 463, 470, 136 P. 973, 976 (1913) (noting that "[w]hether leading questions should be allowed is a matter mostly within the discretion of the trial court, and any abuse of the rules regarding them is not ordinarily a ground for reversal"); *Barcus v. State*, 92 Nev. 289, 291, 550 P.2d 411, 413 (1976) (concluding that the district court did not abuse its discretion or prejudice the defendant when it allowed the prosecuting attorney to ask eight- and nine-year-old witnesses leading questions during direct examination). Accordingly, reversal is not warranted.

*Introduction of hearsay testimony*

Turcios argues that the district court erred when it admitted evidence that P.B. allegedly made prior disclosures that Turcios assaulted her. We conclude that the district court properly admitted the testimony as evidence of the victim's prior consistent statements. *See* NRS 51.035(2)(b).

*Discovery motion*

Turcios contends that the district court erred when it denied his pre-trial discovery motion for production of P.B.'s mental health and counseling records. We reject this argument. Because the records are protected by state law, Turcios is not entitled to P.B.'s counseling records. *See* NRS 174.235(2)(b). We also reject his argument that the State committed a *Brady* violation by withholding this evidence because Turcios did not show that P.B.'s mental health and counseling records would benefit him. *See Brady v. Maryland*, 373 U.S. 83 (1963).

*Motion for an independent psychological examination*

Turcios argues that the district court erred in denying his motion for an independent psychological examination of P.B. We conclude that Turcios did not prove a compelling need for P.B. to be independently examined. *See Abbott v. State*, 122 Nev. 715, 725-27, 138 P.3d 462, 469-70 (2006); *Koerschner v. State*, 116 Nev. 1111, 1116-17, 13 P.3d 451, 455 (2000).

*Recalling the complaining witness*

Turcios alleges that the court's denial of his motion to recall P.B. prevented him from presenting a defense and violated his federal constitutional rights under the due process and compulsory process clauses. We conclude that the district court did not abuse its discretion when it denied Turcios's motion because Turcios had a full opportunity to cross-examine the victim when she testified for the State and Turcios did not demonstrate that he was prejudiced by the inability to recall P.B. *See Collins v. State*, 88 Nev. 9, 13-14, 492 P.2d 991, 993 (1972).

*Sufficiency of the evidence*

Turcios argues that the evidence was insufficient to sustain his convictions. We disagree. This court will not reverse a jury's verdict "[w]here there is substantial evidence to support" it. *LaPierre v. State,* 108 Nev. 528, 530, 836 P.2d 56, 57 (1992)). In sexual assault cases, this court has "repeatedly held that the testimony of a sexual assault victim alone is sufficient to uphold a conviction," so long as "the victim[ ] testif[ies] with *some* particularity regarding the incident." *Id.* at 531, 836 P.2d at 58 (emphasis in original). At trial, P.B. testified with particularity regarding incidences of sexual assault and lewdness. Moreover, because the district court properly admitted Turcios's voluntary statement to police, his confession corroborates P.B.'s testimony. A rational trier of fact could determine that any supposed inconsistencies in P.B.'s testimony or lapses in P.B.'s recollection of the incidents were excusable because Turcios's confession supports the material elements. Accordingly, the State produced sufficient evidence for a rational trier of fact to convict Turcios.

*Cruel and unusual punishment*

Turcios asserts that the statutorily mandated sentence the court imposed is cruel and unusual because it is more severe than the sentence for first-degree murder and requires that he serve a minimum of 105 years before he will be eligible for parole. We are not persuaded that his sentence is cruel or unusual under the United States or Nevada Constitutions. *See Houk v. State,* 103 Nev. 659, 664, 747 P.2d 1376, 1379 (1987); *Lloyd v. State,* 94 Nev. 167, 170, 576 P.2d 740, 743 (1978).

*Cumulative error*

Lastly, Turcios contends that even if any of the individual errors of which he complains do not warrant reversal, the cumulative

SUPREME COURT
OF
NEVADA

(O) 1947A

effect of those errors warrants reversal. We disagree. The only errors were the prosecution's vouching for P.B.'s friend from school and eliciting testimony from the friend and the school counselor about P.B.'s trustworthiness. These errors are few and minor. Also, the evidence against Turcios was overwhelming. Although the crimes of which he was accused are grave, we conclude as a matter of law that reversal is not warranted. *See Valdez v. State*, 124 Nev. 1172, 1196, 196 P.3d 465, 481 (2008) (discussing the factors for determining whether cumulative errors require reversal).

Accordingly, we

ORDER the judgment of the district court AFFIRMED.

_____, C.J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____, J.
Gibbons

_____, J.
Pickering

cc:   Hon. Valorie J. Vega, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk