142 Nev., Advance Opinion 34

# IN THE SUPREME COURT OF THE STATE OF NEVADA

TYLER DANIEL CARTER,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 89594



FILED

MAY 14 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of reckless driving resulting in substantial bodily harm and duty to stop at the scene of a crash involving personal injury. Eighth Judicial District Court, Clark County; Jennifer Schwartz, Judge.

*Affirmed in part, reversed in part, and remanded.*

Hayes Wakayama Juan and Dale A. Hayes, Jr., and John M. Marske, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and John T. Afshar, Chief Deputy District Attorney, Clark County,
for Respondent.

---

BEFORE THE SUPREME COURT, PICKERING, PARRAGUIRRE, and BELL, JJ.

SUPREME COURT
OF
NEVADA

(O) 1947A

26-22072

*OPINION*

By the Court, BELL, J.:

When a driver is involved in a motor vehicle crash that results in injuries, Nevada law imposes a duty to stop and take certain actions. Nevada's duty-to-stop statutes, NRS 484E.010 and NRS 484E.030, define those duties, which include providing identification and rendering aid to the injured. In this case, Appellant Tyler Carter remained at the scene of an accident, provided the necessary identifying information to law enforcement, and stayed until medical professionals assumed care of the injured. Carter was not arrested or detained by police at the scene. Carter then left the scene, and the State later charged Carter with violating the duty-to-stop statute. The State secured a conviction on the theory that Carter was required to remain until officers formally released him. Nothing in NRS 484E.010 imposes such a requirement, and this court will not add one.

On appeal, Carter challenges whether the State presented sufficient evidence to sustain Carter's conviction for failing to stop at the scene of an accident and the constitutionality of the duty-to-stop statutes. Carter also raises claims regarding the exclusion of body-worn-camera footage, prosecutorial misconduct, an instruction regarding the duty to stop, and cumulative error. The State presented insufficient evidence at trial to support a conviction for violating the duty to stop at the scene of an accident, making several of Carter's claims moot. Carter's remaining claims of error do not support reversal. Accordingly, we affirm Carter's conviction for reckless driving resulting in substantial bodily harm, reverse Carter's conviction for violating the duty to stop at the scene of an accident, and remand for the district court to consider all available sentencing options for

the reckless-driving conviction and to enter an amended judgment of conviction.

## FACTS AND PROCEDURAL HISTORY

Tyler Carter triggered a multi-vehicle collision on I-15 near Spring Mountain Road in Las Vegas. Carter struck the trailer of another vehicle. Amid ongoing construction and slow-moving traffic, a chain reaction followed involving several vehicles. A witness at the scene promptly called 911. Among the first responders, Nevada Highway Patrol Sergeant James Pazos arrived shortly after the accident.

Pazos helped Carter out of Carter's overturned truck. Body-worn-camera footage shows Carter exiting the truck and producing his driver's license as requested. Carter also began describing the events leading to the crash to the best of his knowledge. Pazos did not detect any smell of alcohol on Carter. At the scene, Carter spoke with at least four Nevada Highway Patrol (NHP) officers and even helped remove a tire from the center of the freeway. Carter remained on-site after emergency personnel arrived and was seen speaking with a passenger from another vehicle.

Another NHP officer on the scene, Sun Lee, distributed voluntary statement forms. Carter filled in his name, address, and phone number but left the narrative portion blank. Carter informed Lee he was too distraught to fill in the narrative portion. Lee asked Carter some questions about the accident, including whether Carter had consumed any drinks, to which Carter responded, "like two drinks." Upon hearing the admission, Lee privately suggested to Pazos that they should perform field sobriety tests on Carter. Pazos, the only sergeant on duty, replied he would attempt to locate a graveyard shift officer to conduct the tests.

Supreme Court
of
Nevada

(O) 1947A

Before any field sobriety testing, Carter was picked up from the scene. Carter left approximately 35 minutes after the crash and about 10 minutes after the conversation with Lee. During that time, no officer ordered Carter to stay at the scene. When he departed, Carter left his driver's license with Lee, which she described as unusual.

Lee completed the report of the accident and determined that Carter was at fault. The Traffic Crash Report described Carter as "[a]pparently [n]ormal." Lee also checked a box for "Not Involved" under "Alcohol/Drug Involvement."

For his role in the accident, Carter was charged with (1) driving under the influence resulting in substantial bodily harm, (2) reckless driving resulting in substantial bodily harm, and (3) duty to stop at scene of crash involving personal injury. The jury acquitted Carter of driving under the influence but found Carter guilty of reckless driving resulting in substantial bodily harm and violating the duty to stop at the scene of a crash involving personal injury. While Carter could have received probation on the reckless-driving charge, the duty-to-stop charge did not allow for the option of probation. The district court sentenced Carter to concurrent prison terms of two to five years for each charge. Carter now appeals his convictions for violating the duty to stop and reckless driving causing substantial bodily harm.

## DISCUSSION

On appeal, Carter raises several issues regarding the duty-to-stop conviction. Carter challenges the sufficiency of the evidence, constitutionality of the statute, exclusion of body-worn-camera footage, and prosecutorial misconduct regarding arguments related to the duty-to-stop statute. Carter also raises issues impacting both convictions, including prosecutorial misconduct for making speculative arguments, prosecutorial

Supreme Court
OF
Nevada

(O) 1947A

4

misconduct for arguing for justice for the community and victims, and cumulative error.

*The State presented insufficient evidence to convict Carter for violating the duty to stop at the scene of an accident*

Carter contends the conviction for violating the duty to stop rests on insufficient evidence because he remained on-site for 35 minutes and fulfilled all duties enumerated under Nevada law. The State responds Carter caused the crash and failed to complete his statutory requirements. Specifically, the State alleges evidence of Carter's departure prior to being permitted to leave, together with evidence of his failure to render reasonable assistance to those injured, is sufficient to sustain the conviction.

The standard of review for sufficiency of the evidence requires this court to view the evidence presented at trial in the light most favorable to the prosecution. *Jackson v. State*, 117 Nev. 116, 122, 17 P.3d 998, 1002 (2001). We then must ask "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Domingues v. State*, 112 Nev. 683, 693, 917 P.2d 1364, 1371 (1996)).

Nevada has two statutes that operate together to instruct a driver involved in an accident. One of those statutes covers the duties for a driver who is involved in an accident. NRS 484E.030. The other makes it a felony for a driver to leave the scene before complying with those duties. NRS 484E.010(1), (3). When read together, the statutes require drivers involved in crashes resulting in injury to stop at the scene of the accident and remain there until they have given their name, address, and vehicle registration number to other drivers; provided their driver's license to law

 

enforcement; and rendered reasonable assistance to any person injured in the accident.[1] We conclude that Carter complied with all of these duties.

*Carter remained at the scene of the crash and provided identification*

Carter argues he cannot be convicted of violating the duty to stop because he departed only after voluntarily providing his driver's license to law enforcement, speaking with four NHP officers, and remaining at the scene of the crash for approximately 35 minutes. The State claims Carter

---

[1]NRS 484E.010(1) requires the driver to "immediately stop" and "remain at the scene of the crash until the driver has fulfilled the requirements of NRS 484E.030." Former NRS 484E.030(1), in effect at the time of the crash, *see* 2021 Nev. Stat., ch. 506, § 67.4, at 3343, reads as follows:

> 1. The driver of any vehicle involved in a crash resulting in injury to or death of any person or damage to any vehicle or other property which is driven or attended by any person shall:
>
> (a) Give his or her name, address and the registration number of the vehicle the driver is driving, and shall upon request and if available exhibit his or her license to operate a motor vehicle to any person injured in such crash or to the driver or occupant of or person attending any vehicle or other property damaged in such crash;
>
> (b) Give such information and upon request manually surrender such license to any police officer at the scene of the crash or who is investigating the crash; and
>
> (c) Render to any person injured in such crash reasonable assistance, including the carrying, or the making of arrangements for the carrying, of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary, or if such carrying is requested by the injured person.

did not remain long enough to complete the statutory requirements and left during an active investigation. While the State does not dispute that Carter provided identification, it insists Carter's departure was premature because NHP was still in possession of Carter's driver's license.

The State cites *State v. McKellips*, 118 Nev. 465, 49 P.3d 655 (2002), to support its view that a person is not free to leave until all legal duties are fulfilled, including remaining present for a pending investigation. *McKellips*, however, is distinguishable. *McKellips* involved a determination of whether a person suspected of DUI and placed in the back of a police car was arrested or detained, not a premature departure from an active investigation. *Id.* at 469, 49 P.3d at 659. Unlike in *McKellips*, here, Carter was not made aware that he was the subject of a potential DUI investigation prior to his departure. Carter was not arrested or detained by law enforcement or directed to remain in the back of a patrol vehicle. Nothing in the record suggests officers instructed Carter to remain at the scene after he provided identification and answered questions.

The State concedes Carter provided his driver's license to authorities but argues that a reasonable person in Carter's position would have understood they were not free to leave because NHP was still in possession of the driver's license. The State's theory focuses on the United States Constitution's Fourth Amendment "free to leave" jurisprudence; however, the question is not whether Carter felt free to depart but rather whether he failed to perform a statutory duty before doing so. None of the cases cited by the State involve an individual leaving the scene of a traffic incident while their driver's license remained with law enforcement, and we do not conclude Carter's conduct amounted to fleeing the scene of an accident simply because his driver's license was not returned to him.

Nevada law requires a driver to "exhibit" and, upon request, "surrender" their license to an officer. NRS 484E.030(1)(a), (b). The statute does not require an officer to return the license before a driver may depart.

*Carter provided reasonable assistance*

Carter avers he provided reasonable assistance by remaining at the scene of the crash until medical professionals arrived. Carter maintains he had no duty to render aid once medical professionals arrived on scene. *See* Restatement (Second) of Torts § 314 A (A.L.I. 1965). The State counters Carter failed to render reasonable assistance because Carter did not personally contact emergency services, provide aid to others, or check on the individual who was severely injured. The State further responds that Carter's reliance on tort law is misplaced because he was charged under a criminal statute.

This court has previously stated that the purpose of the duty-to-stop statute, NRS 484E.010, "is to require drivers involved in an accident to stop and provide identifying information and render reasonable assistance to injured persons for the benefit of any person who may have been injured in the accident." *Clancy v. State*, 129 Nev. 840, 845, 313 P.3d 226, 229-30 (2013). The statutory requirement to render "reasonable assistance," NRS 484E.030(1)(c), is critical, but the statute does not require a driver to personally administer medical care or to assume control of emergency response efforts. The statute requires only "reasonable assistance," and it illustrates that duty by reference to arranging medical transport when necessary or requested.

Here, emergency personnel were summoned immediately by a 911 caller and arrived while Carter was still in his overturned vehicle. Carter stayed on-site for approximately 35 minutes, during which time first responders assumed control. Nothing in the record indicates that Carter

 

refused a request for assistance, obstructed medical care, failed to summon aid, or departed before emergency responders were on scene and providing treatment. Body-worn-camera footage reveals Carter left the scene approximately 20 minutes after the ambulance departed transporting the only injured person. Carter was seen comforting and conversing with the injured driver's son, and Carter assisted law enforcement by moving a tire out of the middle of the road. Consequently, we conclude Carter satisfied any duty to render reasonable assistance.

In sum, the record demonstrates that Carter remained at the scene long enough to identify himself to law enforcement and answer questions. He stayed until after medical personnel assumed control. Under these facts, and "after viewing the evidence in the light most favorable to the prosecution," we conclude that Carter complied with every requirement of NRS 484E.030. *Jackson*, 117 Nev. at 122, 17 P.3d at 1002 (quoting *Domingues*, 112 Nev. at 693, 917 P.2d at 1371). The State's theory would require this court to impose an additional condition that a driver remain at the scene until officers dismiss the driver, even after all statutory duties are satisfied. Nothing in NRS 484E.010 or NRS 484E.030 supports that requirement, and no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Therefore, we reverse Carter's conviction for violating the duty to stop at the scene of an accident for insufficient evidence.

Given our resolution of this dispositive issue, we do not reach Carter's constitutional challenges to NRS 484E.010 and NRS 484E.030 or his contentions that the district court abused its discretion in excluding select body-worn-camera footage. We also do not reach Carter's claims that the State engaged in prosecutorial misconduct when describing the purpose

of the duty-to-stop statutes or that the jury instruction regarding violating the duty to stop was flawed. We address the prosecutor's remarks only as they relate to both charges—that is, the comments on Carter's failure to complete the voluntary statement form and the comments regarding delivering justice.

*Carter fails to show he was prejudiced by the State's comments on Carter's decision not to completely fill out the voluntary statement form*

Carter challenges the prosecution's statements during closing arguments regarding his decision not to completely fill out the voluntary statement form. Carter takes issue with the following remarks:

> [Carter] was probably drunk out of his mind; he didn't know what was going on.
>
> . . . .
>
> Because he had no clue what happened. All right? He's too drunk to know exactly what happened.
>
> . . . .
>
> Oh, I got to write this down now? I got to write what my lies I just told? I got to write that down, regurgitate that in writing? You think this man's going to remember how to write whatever he just made up on the piece of paper? So this is what you have.
>
> . . . .
>
> [Carter] can't write this piece of paper, because he knows he's going to get caught. He doesn't remember what he said to the officers. He's probably thinking, I have no clue what I told them; I can't write anything down. He's probably on the phone with somebody telling him not to write anything down. That's why he was acting that way.

The State argues the use of rhetorical questions and hypotheticals served to challenge the reasonableness of Carter's decision not to fill out the voluntary form and leave the scene.

At trial, Carter failed to object to the prosecutor's statements. When reviewing claims of prosecutorial misconduct, this court "must determine whether the prosecutor's conduct was improper" and, if so, whether the "conduct warrants reversal." *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). "In the context of alleged prosecutorial misconduct that has not been preserved for review, only plain or patently prejudicial error will be considered." *Bridges v. State*, 116 Nev. 752, 763, 6 P.3d 1000, 1008 (2000) (citation modified). In conducting plain-error review, this court will examine "whether there was error, whether the error was plain or clear, and whether the error affected the defendant's substantial rights." *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (citation modified). "An error is plain if the error is so unmistakable that it reveals itself by a casual inspection of the record." *Patterson v. State*, 111 Nev. 1525, 1530, 907 P.2d 984, 987 (1995) (citation modified).

"A prosecutor may not argue facts or inferences not supported by the evidence." *Williams v. State*, 103 Nev. 106, 110, 734 P.2d 700, 703 (1987). "Nevertheless, the prosecutor may 'argue inferences from the evidence and offer conclusions on contested issues.'" *Miller v. State*, 121 Nev. 92, 100, 110 P.3d 53, 59 (2005) (quoting *Jones v. State*, 113 Nev. 454, 467, 937 P.2d 55, 63 (1997)). Here, even if the remarks were inappropriate, Carter cannot show prejudice because he was acquitted by the jury on the DUI charge and we are vacating the violation of the duty-to-stop conviction. The evidence of reckless driving was overwhelming. We conclude that Carter does not show plain or patently prejudicial error.

 

*The prosecution improperly urged jurors to provide justice to the people of the community, but the evidence of reckless driving was overwhelming*

Carter further alleges the prosecution's statements that (1) "the State of Nevada asks that you give the victims in this case and the people of this community the justice they deserve" and (2) "[h]e's already evaded his responsibility once" were improper because they ask the jurors to place themselves in the place of the victims. The State replies that prosecutors are entitled to argue for justice and to advocate for accountability.

We agree with Carter. In *Rose v. State*, we concluded the prosecutor's statement asking the jury to ensure that the victims "get their justice" and appealing to the jurors' sympathies was found to constitute prosecutorial misconduct. 123 Nev. 194, 210, 163 P.3d 408, 419 (2007). We have previously held that an attorney may not ask the jury to place themselves in the shoes of the victims, and we have repeatedly recognized such golden-rule arguments as prosecutorial misconduct. *See, e.g., Howard v. State*, 106 Nev. 713, 719, 800 P.2d 175, 178 (1990), *abrogated on other grounds by Harte v. State*, 116 Nev. 1054, 1072 n.6, 13 P.3d 420, 432 n.6 (2000); *Jacobs v. State*, 101 Nev. 356, 359, 705 P.2d 130, 132 (1985).

In *McGuire v. State*, 100 Nev. 153, 158, 677 P.2d 1060, 1064 (1984), we held that arguments asking jurors to place themselves in the place of a victim or a member of a victim's family are "exceedingly improper in and of themselves." The prosecution's statements did precisely what *McGuire* and *Rose* forbid. Asking jurors to provide victims with justice is "improper because [it] infect[s] the jury's objectivity." *Lioce v. Cohen*, 124 Nev. 1, 22, 174 P.3d 970, 984 (2008). Here, the prosecution urged jurors to deliver justice to the victims, transforming its closing argument into a moral plea rather than an argument on the merits. The assertion that Carter

"already evaded his responsibility once" further invited jurors to punish perceived past wrongs rather than decide the case before them.

Despite the improper nature of the comments, even when a prosecutor resorts to condemnable tactics and "foul blows," we will not overturn a conviction supported by overwhelming evidence. *Yates v. State*, 103 Nev. 200, 205, 734 P.2d 1252, 1255 (1987). Carter was convicted of reckless driving resulting in substantial bodily harm. In addition, the record confirms that NHP determined Carter to be at fault for the accident, a conclusion grounded in both eyewitness accounts and physical evidence. Multiple witnesses testified that Carter's vehicle initiated the chain collision by striking the trailer of another truck amid congested traffic. The jury heard detailed eyewitness testimony and viewed body-worn-camera footage confirming that Carter's vehicle was the catalyst for the accident. While the jury acquitted Carter on the charge of driving under the influence, it reasonably found the evidence of reckless driving compelling. We conclude that Carter fails to demonstrate plain error considering the overwhelming evidence presented at trial regarding his reckless driving.

*Cumulative error*

Carter asserts the cumulative effect of the errors warrants vacating both of his convictions. As we have reversed the duty-to-stop conviction, and because only one error could impact the reckless-driving conviction—the prosecutor's statements during closing—we conclude there is nothing to cumulate to warrant reversal of the reckless-driving charge. *Barlow v. State*, 138 Nev. 207, 221, 507 P.3d 1185, 1199 (2022).

## CONCLUSION

Nevada's duty-to-stop statutes impose clear duties for a driver involved in an accident. Here, Carter met them. He stopped, identified himself, and remained while emergency responders arrived and assumed

13

care of the injured. He was not detained or arrested at the scene. The State urges this court to hold that a driver must remain until police give permission to leave. The duty-to-stop statutes contain no such requirement. Carter fulfilled the duties the law requires, and the evidence does not support a conviction for violating the duty to stop. Accordingly, we reverse the conviction as to violating the duty to stop. The conviction as to the reckless-driving count is affirmed. Because a conviction for violating the duty to stop carries mandatory prison time, while a reckless-driving conviction does not, we remand for the district court to consider all available sentencing options for the reckless-driving conviction and to enter an amended judgment of conviction.

_____, J.
Bell

We concur:

_____, J.
Pickering

_____ J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A