OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 In this appeal, we consider whether the fact that a motorist is driving below the speed limit is, by itself, sufficient to give rise to a reasonable suspicion of driving while intoxicated warranting an investigative stop. While reasonable suspicion is not a stringent standard, we conclude that it requires more than a mere observation that a motorist is driving slowly. There must be additional indicia of erratic driving or unusual behavior before a reasonable suspicion arises justifying an investigative stop. Where no reasonable suspicion exists, an inquiry stop may nonetheless be justified under the community caretaking doctrine when a police officer has an objectively reasonable belief that a slow driver is in need of emergency assistance.
 

 FACTS
 

 While on routine patrol of Pyramid Lake Highway, at 12:45 a.m., on July 24, 2005, Pyramid Police Officer Michael Durham observed a white pickup truck driving very slowly. The section of Pyramid Lake Highway was dark with no streetlights or other incidental lighting. Officer Durham pulled behind the truck and activated the video recorder mounted on the dash of the police vehicle. A copy of the videotape was admitted into evidence at the preliminary hearing.
 

 At the preliminary hearing, Officer Durham testified that he followed the truck for 3 miles and determined that it was traveling 48 miles per hour in a zone where the maximum speed limit was 65 miles per hour. Officer Durham also testified that, although the driver was not weaving, he observed the truck cross the fog line of the roadway two times and the center divider line three times. On cross-examination, Officer Durham admitted that the written police report he prepared did not indicate that the driver crossed the fog line of the roadway, but instead stated that he crossed the yellow center divider line five times. When confronted with the police report, Officer Durham admitted that his testimony was inaccurate, explaining “what my report says is what happened that night.” Officer Durham initiated an investigative traffic stop based on his belief that the driver was under the influence of alcohol.
 

 When the driver rolled down the window, Officer Durham immediately smelled alcohol. He administered several field sobri
 
 *1173
 
 ety tests and, ultimately, arrested respondent Abraham Rincon for driving while under the influence of alcohol (DUI). Approximately two hours later, Rincon underwent three descending blood draws: his blood alcohol level measured .122, .109, and .102, respectively. Because Rincon had prior misdemeanor DUI convictions, he was subsequently charged with one count of felony DUI.
 

 After the preliminary hearing, defense counsel filed a motion to suppress the blood evidence, arguing that there was no reasonable suspicion to justify the traffic stop. The State opposed the motion. Without conducting an evidentiary hearing, the district court granted the motion, finding that “[a]fter viewing the video tape of the traffic stop, this Court concludes that probable cause did not exist to warrant the officer’s stop.”
 
 [1]
 
 The State filed this timely appeal.
 

 DISCUSSION
 

 The district court granted respondent’s motion to suppress the evidence of his blood alcohol level, finding that the evidence was obtained as a result of an unlawful traffic stop. The State contends that the traffic stop was lawful and that the district court abused its discretion by suppressing the evidence. Specifically, the State argues that the fact that Rincon was driving substantially under the speed limit was alone sufficient to satisfy the reasonable suspicion standard. We disagree.
 

 The Fourth Amendment prohibition against unreasonable searches and seizures extends to investigative traffic stops.
 
 [2]
 
 In order for a traffic stop to comply with the Fourth Amendment, there must be, at a minimum, reasonable suspicion to justify the intrusion.
 
 [3]
 
 Reasonable suspicion is not a stringent standard, but it does require something more than a police officer’s hunch.
 
 [4]
 
 A law enforcement officer has a reasonable suspicion justifying an investigative stop if there are specific, articulable facts supporting an inference of criminal activity.
 
 [5]
 
 In determining the reasonableness of a stop, the evidence is viewed under the totality of the circumstances and in the context of the law enforcement officer’s training
 
 *1174
 
 and experience.
 
 [6]
 
 We recognize that a law enforcement officer trained in criminal investigation may, from a succession of innocent circumstances, draw an inference of criminal activity that may often elude an untrained individual.
 
 [7]
 
 We are also mindful that the United State Supreme Court has described the reasonable suspicion standard as an ‘ ‘elusive concept,’ ’
 
 [8]
 
 which is not readily susceptible to ‘“a neat set of legal rules.’ ”
 
 [9]
 

 As the State notes in its appellate brief, many jurisdictions have concluded that the reasonable suspicion standard is satisfied where the motorist is driving well below the speed limit
 
 and
 
 is engaged in another unusual driving behavior indicative of intoxication, such as swerving in the travel lane,
 
 [10]
 
 driving on the shoulder of the road,
 
 [11]
 
 straddling the lane,
 
 [12]
 
 crossing the center line,
 
 [13]
 
 or weaving within or outside the travel lane.
 
 [14]
 

 However, the State has cited no legal authority in support of its argument that slow driving without any other indicia of erratic driving or unusual behavior is sufficient to justify a traffic stop. The State’s reliance on
 
 Taylor v.
 
 State
 
 [15]
 
 in support of its contention is misplaced. In Taylor, we concluded that a traffic stop was justified because: the vehicle was driving slowly, the driver appeared nervous, and the officer observed a safety hazard, specifically, a nonfunctioning brake light.
 
 [16]
 
 In doing so, we stated that the slow speed of the vehicle might have “trigger[ed] suspicion” that the driver was intoxicated.
 
 [17]
 
 We did not, however, conclude that the sole fact that the driver was proceeding slowly was sufficient to satisfy the reasonable suspicion standard. And to the extent that our decision in
 
 Taylor
 
 could be construed to support that proposition, it is hereby clarified.
 

 
 *1175
 
 Notably, other jurisdictions which have considered the issue have concluded that “[tjhe mere fact that a driver is traveling at a slower than usual speed on a roadway does not by itself create a reasonable suspicion of driving under the influence of alcohol.”
 
 [18]
 
 We agree. We reach our conclusion because in certain circumstances, such as when road conditions are hazardous or weather is inclement, driving slowly may be a prudent decision, not an indication that a motorist is intoxicated.
 

 “The touchstone of the Fourth Amendment is reasonableness.”
 
 [19]
 
 The reasonableness requirement “ ‘strikes a balance between the public interest and the individual’s right to personal security free from arbitrary interference by law officers.’”
 
 [20]
 
 While there is a compelling public policy interest to protect Nevadans from drunk drivers, that interest is not served by allowing a police officer unfettered discretion to stop a driver for what may very well be a prudent driving decision.
 
 [21]
 
 We therefore hold that, absent evidence of a traffic violation,
 
 [22]
 
 there must be additional indicia of erratic driving or unusual behavior before a reasonable suspicion arises that a motorist who is driving slowly is intoxicated. In analyzing whether there was reasonable suspicion to justify an investigative stop of a slow driver, a reviewing court may consider a variety of relevant circumstances, including the road and weather conditions, the time of day, the driving pattern, the behavior of the driver, and any other circumstance that appears to be indicative of criminal activity in light of the officer’s training and experience.
 
 [23]
 

 Absent reasonable suspicion, and under very limited and narrow circumstances, an inquiry stop of a slow driver may also be permissible pursuant to the community caretaking exception to the
 
 *1176
 
 Fourth Amendment.
 
 [24]
 
 The community caretaking doctrine recognizes that police officers have a duty to aid drivers who are in distress which is “totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.”
 
 [25]
 
 The community caretaking exception applies if a police officer initiates a traffic stop based on a reasonable belief that a slow driver is in need of emergency assistance.
 
 [26]
 
 An objectively reasonable belief that emergency assistance is needed may arise if a police officer observes circumstances indicative of a medical emergency or automotive malfunction.
 
 [27]
 
 For example, in a case where there were no extraneous factors such as inclement weather or hazardous road conditions, one court concluded that it was reasonable to believe a driver was in need of emergency assistance where he was driving “excessively slow,” under ten miles per hour.
 
 [28]
 
 In adopting the community caretaking doctrine, we reiterate that the exception will be narrowly applied and an inquiry stop is justified only where there are clear indicia of an emergency.
 
 [29]
 

 Turning to this case, the record is insufficient to effectively review the district court’s decision granting the motion to suppress. The district court did not conduct a suppression hearing and stated no findings on the record. Additionally, the district court’s order granting the motion to suppress incorporates the wrong legal standard
 
 [30]
 
 and does not include express findings of fact. Instead, the district court order merely summarizes the parties’ arguments and states that “[a]fter viewing the video tape of the traffic stop, this Court concludes that probable cause did not exist to warrant
 
 *1177
 
 the officer’s stop.” Given the district court’s statement, it is clear that the district court made factual inferences about Rincon’s driving after viewing the videotape, but it failed to include those factual findings in its order. Rincon asks this court to speculate that the district court found that the police officer’s testimony that Rincon crossed the lines of the roadway was not credible and was, in fact, inconsistent with the videotape evidence of his driving. We decline to speculate about the factual inferences drawn by the district court.
 

 This court recently advised district courts to issue express factual findings when ruling on suppression motions so that this court would not have to speculate as to what findings were made below.
 
 [31]
 
 This court does not act as a finder of fact, and we are therefore unable to determine whether the district court found the police officer’s testimony was credible or was inconsistent with the videotape. Accordingly, we vacate the district court’s order granting the motion to suppress and remand this case to the district court for an evidentiary hearing. The district court should apply the clarified standards set forth in this opinion and enter written findings of fact and conclusions of law. Once written factual findings are entered, they will be entitled to deference on appeal and will not be overturned by this court if supported by substantial evidence.
 
 [32]
 
 We emphasize that the district court is in the best position to adjudge the credibility of the witnesses and the evidence, and “unless this court is ‘left with the definite and firm conviction that a mistake has been committed,’ ” this court will not second-guess the trier of fact.
 
 [33]
 

 CONCLUSION
 

 The fact that a motorist is driving slowly does not, by itself, create a reasonable suspicion justifying an investigative stop. There must be additional indicia of erratic driving or unusual behavior before a reasonable suspicion arises justifying an investigative stop. Where no reasonable suspicion exists, an inquiry stop may nonetheless be justified under the community caretaking doctrine when a police officer has an objectively reasonable belief that a slow driver is in need of emergency assistance. Because the record before us is insufficient to permit review of the district court’s rul
 
 *1178
 
 ing, we vacate the district court’s order and remand this case to the district court for further proceedings applying the clarified standards we adopt today.
 
 [34]
 

 Becker and Parraguirre, JJ., concur.
 

 [1]
 

 It is possible that the district court found that, in light of the police videotape of the incident, Officer Durham’s testimony in this respect was not credible. However, as explained below, the record is not sufficiently clear on this issue because the district court failed to enter express factual findings.
 

 [2]
 

 U.S. Const. amend. IV; Nev. Const. art. 1, § 18;
 
 Gama v.
 
 State, 112 Nev. 833, 836, 920 P.2d 1010, 1012 (1996).
 

 [3]
 

 Walker
 
 v. State, 113 Nev. 853, 865, 944 P.2d 762, 770 (1997) (citing
 
 Terry
 
 v.
 
 Ohio,
 
 392 U.S. 1, 21-22 (1969));
 
 see also
 
 NRS 171.123(1).
 

 [4]
 

 State v. Lisenbee,
 
 116 Nev. 1124, 1128-29, 13 P.3d 947, 950 (2000).
 

 [5]
 

 Id.
 
 at 1127-28, 13 P.3d at 949;
 
 State v. Sonnenfeld,
 
 114 Nev. 631, 633, 958 P.2d 1215, 1216 (1998).
 

 [6]
 

 Sonnenfeld,
 
 114 Nev. at 633, 958 P.2d at 1216;
 
 State, Dep’t of Mtr. Vehicles
 
 v.
 
 Long,
 
 107 Nev. 77, 79, 806 P.2d 1043, 1044 (1991).
 

 [7]
 

 See Long,
 
 107 Nev. at 79, 806 P.2d at 1044;
 
 U.S. v. Sanchez-Pena,
 
 336 F.3d 431, 437-38 (5th Cir. 2003).
 

 [8]
 

 United States
 
 v.
 
 Cortez,
 
 449 U.S. 411, 417 (1981).
 

 [9]
 

 United States v. Arvizu,
 
 534 U.S. 266, 274 (2002) (quoting
 
 Ornelas v. United States,
 
 517 U.S. 690, 695-96 (1996)).
 

 [10]
 

 Wells v. State,
 
 772 N.E.2d 487, 490 (Ind. Ct. App. 2002).
 

 [11]
 

 Sanchez-Pena,
 
 336 F.3d at 437.
 

 [12]
 

 U.S.
 
 v.
 
 Botero-Ospina,
 
 71 F.3d 783, 788 (10th Cir. 1995).
 

 [13]
 

 U.S. v. Bertrand,
 
 926 F.2d 838, 844 (9th Cir. 1991).
 

 [14]
 

 Veal v. State,
 
 614 S.E.2d 143, 145 (Ga. Ct. App. 2005);
 
 Esteen
 
 v.
 
 State,
 
 503 So. 2d 356, 357-58 (Fla. Dist. Ct. App. 1987),
 
 modified on other grounds by Kehoe
 
 v.
 
 State,
 
 521 So. 2d 1094 (Fla. 1988).
 

 [15]
 

 111 Nev. 1253, 903 P.2d 805 (1995),
 
 overruled on other grounds by Gama,
 
 112 Nev. 833, 920 P.2d 1010.
 

 [16]
 

 Id.
 
 at 1254, 1257 & n.3, 903 P.2d at 806, 808 & n.3.
 

 [17]
 

 Id.
 
 at 1257, 903 P.2d at 808.
 

 [18]
 

 State v. Brown,
 
 509 N.W.2d 69, 71 (N.D. 1993);
 
 see also Raulerson
 
 v.
 
 State,
 
 479 S.E.2d 386, 387 (Ga. Ct. App. 1996);
 
 Faunce
 
 v.
 
 State,
 
 884 So. 2d 504, 506-07 (Fla. Dist. Ct. App. 2004).
 

 [19]
 

 Florida
 
 v.
 
 Jimeno,
 
 500 U.S. 248, 250 (1991).
 

 [20]
 

 Semich v. State,
 
 506 S.E.2d 216, 217 (Ga. Ct. App. 1998) (quoting
 
 State
 
 v.
 
 Armstrong,
 
 477 S.E.2d 635 , 637 (Ga. Ct. App. 1996)).
 

 [21]
 

 See generally State, Dep’t of Mtr. Vehicles v. Kinkade,
 
 107 Nev. 257, 259, 810 P.2d 1201, 1203 (1991) (recognizing that “implied consent statute should be liberally construed so as to keep drunk drivers off the streets”).
 

 [22]
 

 See
 
 NRS 484.371(1) (“A person shall not drive a motor vehicle at such a slow speed as to impede the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law.”);
 
 Gama,
 
 112 Nev. at 836, 830 P.2d at 1012-13 (stop of vehicle based on a belief that the driver has committed a traffic infraction is reasonable).
 

 [23]
 

 See Faunce,
 
 884 So. 2d at 506.
 

 [24]
 

 Cady
 
 v.
 
 Dombrowski,
 
 413 U.S. 433, 441 (1973);
 
 see also State
 
 v.
 
 Rinehart,
 
 617 N.W.2d 842, 844 (S.D. 2000);
 
 Brown,
 
 509 N.W.2d at 71-72;
 
 McDonald v. State,
 
 759 S.W.2d 784, 785 (Tex. Ct. App. 1988);
 
 State v. Garbin,
 
 739 A.2d 1016, 1018-19 (N.J. Super. Ct. App. Div. 1999);
 
 Com.
 
 v.
 
 Waters,
 
 456 S.E.2d 527, 529-30 (Va. Ct. App. 1995).
 

 [25]
 

 Cady,
 
 413 U.S. at 441.
 

 [26]
 

 See Rinehart,
 
 617 N.W.2d at 844.
 

 [27]
 

 See id.
 

 [28]
 

 State v. Martinez,
 
 615 A.2d 279, 280-81 (N.J. Super. Ct. App. Div. 1992).
 

 [29]
 

 See Waters,
 
 456 S.E.2d at 530 (“ ‘The “community caretaking” exception should be cautiously and narrowly applied in order to minimize the risk that it will be abused or used as a pretext for conducting an investigatory search for criminal evidence’ ” (quoting
 
 Barrett v. Com.,
 
 447 S.E.2d 243, 247 (Va. Ct. App. 1994) (Coleman, J., dissenting))).
 

 [30]
 

 The district court order applied the “probable cause” standard; only reasonable suspicion is required.
 

 [31]
 

 Rosky v.
 
 State,
 
 121 Nev. 184, 191, 111 P.3d 690, 695 (2005).
 

 [32]
 

 See
 
 State
 
 v.
 
 McKellips,
 
 118 Nev. 465, 469, 49 P.3d 655, 658-59 (2002).
 

 [33]
 

 Id. at 469, 49 P.3d at 658 (quoting
 
 United States v. Gypsum, Co.,
 
 333 U.S. 364, 395 (1948)).
 

 [34]
 

 This opinion constitutes our final decision of this matter. Any subsequent appeal shall be docketed in this court as a separate matter.