# IN THE SUPREME COURT OF THE STATE OF NEVADA

RAYMOND G. PADILLA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 73353

**FILED**

DEC 13 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## *ORDER OF REVERSAL*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of ownership or possession of a firearm by a prohibited person. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

Appellant Raymond G. Padilla appeals his conviction, arguing law enforcement violated his Fourth Amendment rights during an investigatory stop when officers opened the center console in his vehicle and discovered a firearm. Padilla challenged the validity of the search in his motion to suppress before the district court. The district court denied Padilla's motion from the bench without entering a written order. Following a three-day jury trial, the district court convicted Padilla of ownership or possession of a firearm by a prohibited person. Padilla appeals the district court's denial of his motion to suppress and seeks reversal of his conviction.

"A motion to suppress presents mixed questions of law and fact. On appeal from an order [denying] a motion to suppress, '[t]his court reviews findings of fact for clear error . . . .'"[1] *State v. Lloyd*, 129 Nev. 739,

---

[1] We require district courts to make clear factual findings when resolving a defendant's motion to suppress to facilitate proper appellate review. *See Rosky v. State*, 121 Nev. 184, 191, 111 P.3d 690, 695 (2005) (explaining that clear factual findings are vital so that the trial court's

19·50567

743, 312 P.3d 467, 469 (2013) (alteration in original) (citation omitted) (quoting *State v. Beckman*, 129 Nev. 481, 486, 305 P.3d 912, 916 (2013)). Additionally, "[w]e review de novo the district court's legal determination of the constitutionality" of law enforcement's conduct. *Cortes v. State*, 127 Nev. 505, 509, 260 P.3d 184, 187 (2011).

There is a constitutional guarantee for "people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" unless law enforcement first obtains a warrant based on "probable cause . . . and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also* Nev. Const. art. 1, § 18. The United States Supreme Court has reaffirmed the Fourth Amendment's property-based protections to decide if "[t]he [g]overnment physically occupied private property for the purpose of obtaining information." *United States v. Jones*, 565 U.S. 400, 404 (2012). The Court explained that "the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*," property-based conceptions of Fourth Amendment rights. *Id.* at 409; *see Katz v United States*, 389 U.S. 347, 351 (1967).

"The Fourth Amendment prohibition against unreasonable searches and seizures extends to investigative traffic stops." *State v.*

findings are not left to guesswork, and without such express findings, this court is unable to conduct appropriate appellate review). The district court did not do so in this case. However, because Padilla's case was tried and a sufficient appellate record is before us, we may proceed to the merits of his argument without reversing and remanding for an evidentiary hearing. *See King v. State*, 116 Nev. 349, 354-55, 998 P.2d 1172, 1175 (2000) (declining to reverse based on the district court's failure to conduct an evidentiary hearing where "the record [wa]s sufficient for this court to determine that the evidence [wa]s admissible").

*Rincon*, 122 Nev. 1170, 1173, 147 P.3d 233, 235 (2006). A constitutionally valid stop requires, at a minimum, a reasonable articulable suspicion that, when considered in conjunction with rational inferences from the totality of the circumstances, may then justify a warrantless search or seizure during the stop. *Walker v. State*, 113 Nev. 853, 865, 944 P.2d 762, 770 (1997) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)); *see also* NRS 171.123(1). If law enforcement's stop is valid, officers may request the occupant of a "vehicle to step out of the car" so that further "inquiry may be pursued with greater safety to both." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). Once the vehicle's occupant has been removed from the vehicle, law enforcement may conduct a *Terry* frisk of the individual roadside if there is a reasonable articulable suspicion that officer safety is a concern. *Id.* at 111-12. The "plain view" doctrine may permit the warrantless seizure of evidence within the interior of the vehicle that is in law enforcement's plain view. *See Horton v. California*, 496 U.S. 128, 133-34 (1990) (discussing the "plain view" doctrine and stating "that under certain circumstances the police may seize evidence in plain view without a warrant" (internal quotation marks omitted)).

In *Michigan v. Long*, the United States Supreme Court held that law enforcement may conduct a limited protective sweep of the vehicle in "those areas in which a weapon may be placed or hidden" when officer safety or the safety of others is a concern. 463 U.S. 1032, 1049 (1983). However, officers must possess reasonable articulable suspicion "that the suspect is dangerous *and* the suspect may gain immediate control of weapons" prior to conducting a protective sweep of the vehicle. *Id.* (emphasis added). But the Court emphasized "that the police may [not] conduct automobile searches *whenever* they conduct an investigative stop."

*Id.* at 1049 n.14 (detailing how the same two-prong *Terry* standard controls vehicle stops—law enforcement must be able to articulate reasonable suspicion to justify the vehicle stop *and* to conduct a protective sweep).

Reasonable articulable suspicion "require[s] something more than a police officer's hunch." *Rincon*, 122 Nev. at 1173, 147 P.3d at 235. This low threshold can be met if law enforcement has "specific, articulable facts supporting an inference of criminal activity." *Id.* The reasonableness of a stop is determined by viewing the evidence "under the totality of the circumstances and in the context of the law enforcement officer's training and experience." *Id.* at 1173-74, 147 P.3d at 235. We are aware that the reasonable suspicion standard is tenuous and "not readily susceptible to 'a neat set of legal rules.'" *Id.* at 1174, 147 P.3d at 236 (internal quotation marks omitted). Nonetheless, if the constitutional minimum requirements are not met, "[e]vidence obtained in violation of this right must be suppressed." *Somee v. State*, 124 Nev. 434, 444, 187 P.3d 152, 159 (2008).

Considering the totality of the circumstances, we conclude that law enforcement had reasonable articulable suspicion to justify stopping Padilla. The 911 caller detailed hearing gunshots and described the three vehicles he saw leaving the scene. Although the information received from the 911 caller did not include details like license plate numbers, the nationality of the drivers, or the number of occupants in any of the vehicles, the caller specifically described one of the vehicles as an orange Chevy Avalanche with chrome rims. Shortly after receiving the 911 call, officers observed Padilla driving an orange Chevy Avalanche approximately one block from where gunshots were reported to have been fired. Based on these facts, law enforcement had "specific, articulable facts supporting an inference of criminal activity." *Rincon*, 122 Nev. at 1173, 147 P.3d at 235.

After conducting a valid stop, officers approached the driver and passenger sides of Padilla's vehicle and had adequate visibility into the interior of the vehicle. Neither officer observed any weapons in plain view, nor did the center console attract any undue attention. While Padilla was still inside the vehicle, officers learned that he did not possess a driver's license. Officers then requested that Padilla step outside of his vehicle, at which time they conducted a *Terry* frisk of his person that did not result in the discovery of any weapons. Because there was a reasonable articulable suspicion that officer safety was a concern, we conclude that the *Terry* frisk was justified.

Once the officers conducted the *Terry* frisk of Padilla and discovered no weapons on his person, however, any reasonable suspicion that Padilla was dangerous no longer existed. Although the State relies solely on *Long* to justify one of the officers' actions in conducting a protective sweep by returning to Padilla's vehicle, opening the center console, and revealing the firearm, such reliance is misplaced under the facts present in this case. The circumstances presented in *Long*, at the time law enforcement began its investigatory stop, demonstrated that

> [t]he hour was late and the area rural. Long was driving his automobile at excessive speed, and his car swerved into a ditch. The officers had to repeat their questions to Long, who appeared to be "under the influence" of some intoxicant. Long was not frisked until the officers observed that there was a large knife in the interior of the car into which Long was about to reenter. The subsequent search of the car was restricted to those areas to which Long would generally have immediate control, and that could contain a weapon.

463 U.S. at 1050. The Supreme Court reasoned that "the officers did not act unreasonably in taking preventive measures to ensure that there were

no other weapons within Long's immediate grasp before permitting him to reenter his automobile." *Id.* at 1051.

The facts here are distinguishable. Officers engaged Padilla in an investigatory stop in the afternoon based on a single 911 call describing three vehicles departing an area where gunshots were heard. Once stopped, Padilla responded appropriately to all of the officers' requests, he was not inebriated, and law enforcement had plain view of the interior of the vehicle and observed no weapons. Moreover, the *Terry* frisk of Padilla's person uncovered no weapons. Because Padilla did not have a driver's license, there is no indication in the record that the officers were going to permit Padilla to return to the vehicle, nor did Padilla make movements to return to his vehicle. Accordingly, we conclude that the protective sweep of the vehicle was unjustified because law enforcement no longer possessed a reasonable articulable suspicion that Padilla was dangerous, nor was officer safety or the safety of others a concern.

We acknowledge and agree with the Supreme Court's concern "that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Id.* at 1047. But we must adhere to the protections afforded by the federal and state constitutions and the carefully circumscribed exceptions to the search and seizure doctrine that balance those protections with officer safety concerns. As the Supreme Court stressed, officers are not permitted to conduct protective sweeps "*whenever* they conduct an investigative stop." *Id.* at 1049 n.14. Thus, we conclude that the officer's intrusion into the center console of Padilla's vehicle was not a protective sweep, but an unconstitutional warrantless search and the district court erred in failing to suppress the firearm evidence. *See, e.g., Jones*, 565 U.S. at 403-04 (holding law enforcement's

placement of a tracking device on the undercarriage of a vehicle to obtain information was an unconstitutional search); *see also Somee*, 124 Nev. at 444, 187 P.3d at 159 ("Evidence obtained in violation of [a constitutional] right must be suppressed.").[2] Because possession of the firearm is central to a conviction under NRS 202.360, Padilla's conviction cannot stand.

Accordingly, we ORDER the judgment of conviction REVERSED.[3]

_____, J.
Hardesty

_____, J.        _____, J.
Stiglich                                           Silver

cc:    Hon. Michael Villani, District Judge
       Gaffney Law
       Attorney General/Carson City
       Clark County District Attorney
       Eighth District Court Clerk

---

[2]We have previously recognized that "warrantless searches 'are *per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Lloyd*, 129 Nev. at 743, 312 P.3d at 469 (quoting *Katz*, 389 U.S. at 357). As the State only argued, both in the district court and before us, that the officers had reasonable articulable suspicion pursuant to *Long*, 463 U.S. 1032, we do not address whether any of those "established and well-delineated exceptions" apply in this case.

[3]Because we reverse based on the district court's error in failing to suppress the firearm evidence, we need not address Padilla's remaining arguments on appeal.