

IN THE

# Court of Appeals of Indiana

Eric D. Wilson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*



FILED

Feb 16 2026, 8:26 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 16, 2026

Court of Appeals Case No.
25A-CR-1542

Appeal from the
Morgan Superior Court

The Honorable
Brian H. Williams, Judge

Trial Court Cause No.
55D02-2406-CM-847

**Opinion by Senior Judge Crone**
Judges Vaidik and Altice concur.

**Crone, Senior Judge.**

## Statement of the Case

Eric Wilson appeals his conviction of operating a vehicle while intoxicated, contending that the traffic stop was illegal and that the trial court erred in denying his motion to suppress the evidence obtained during the stop. Finding that the totality of the circumstances does not support a finding of reasonable suspicion for the investigatory traffic stop, we conclude that the evidence was inadmissible and reverse.

## Facts and Procedural History

Around 8:00 a.m. on June 13, 2024, Morgan County Sheriff's Deputy Caleb Merriman was on duty when he encountered Wilson at an intersection in Martinsville. He noticed Wilson "making jerky movements" in his car. Tr. Vol. 2, p. 43. Deputy Merriman followed Wilson and continued to watch him "moving his head rapidly" and "fidgeting around the car[.]" *Id.* at 44. At one of the stop lights, Wilson activated his turn signal right before the light changed. Wilson then turned again so that he was going back in the original direction from which he had come, an action that Deputy Merriman found peculiar. Based on these observations, Deputy Merriman stopped Wilson. Wilson failed

field sobriety tests, and a subsequent blood draw revealed the presence of both amphetamine and methamphetamine in his system.

[3]     The State charged Wilson with Class A misdemeanor operating a vehicle while intoxicated endangering a person, Class C misdemeanor operating while intoxicated, and Class C infraction failure to signal turn. Wilson filed a pretrial motion to suppress the evidence acquired as a result of the traffic stop. The trial court conducted a hearing and subsequently denied the motion. Prior to the start of the bench trial, the State dismissed two counts and proceeded to trial only on the Class C misdemeanor. During trial, Wilson renewed his objection to the admission of the evidence obtained during the stop, which the trial court overruled. Wilson also requested that the evidence from the suppression hearing be incorporated into the evidence at trial. Ultimately, the trial court found Wilson guilty of Class C misdemeanor operating while intoxicated. Wilson now appeals.

## Discussion and Decision

[4]     Wilson challenges the trial court's denial of his motion to suppress the evidence obtained as a result of the investigatory traffic stop. Because he is appealing after a completed trial, the issue is properly framed as whether the trial court erred by admitting the challenged evidence at trial. *Lindsey v. State*, 916 N.E.2d 230, 238 (Ind. Ct. App. 2009), *trans. denied*. We review a trial court's admission of evidence for an abuse of discretion, and we reverse only if the court's decision is clearly against the logic and effect of the facts and circumstances

before it. *Id.* We do not reweigh the evidence, and we consider any conflicting evidence in the light most favorable to the trial court's ruling. *Id.* We also consider any uncontested evidence favorable to the defendant. *Id.*

[5] Wilson argues that Deputy Merriman lacked reasonable suspicion to stop his vehicle and thus violated his rights under both the federal and state constitutions. When a defendant argues that the admission of evidence gives rise to a constitutional violation, we apply a de novo standard of review. *Miller v. State*, 201 N.E.3d 683, 687 (Ind. Ct. App. 2022), *trans. denied*, *cert. denied* (2025). Accordingly, we will review de novo the trial court's ultimate determination of reasonable suspicion.

[6] Within the broad issue of reasonable suspicion to justify an investigatory stop, this case presents a matter of first impression. Here, we consider whether a driver's "jerky" body movements, without more, are sufficient to create reasonable suspicion to support a traffic stop.

## A. Fourth Amendment

[7] The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. U.S. CONST. amend. IV. In order to justify a traffic stop, which is a seizure for purposes of the Fourth Amendment, a law enforcement officer must have reasonable suspicion of criminal conduct. *Clarke v. State*, 868 N.E.2d 1114, 1118 (Ind. 2007) (citing *Terry v. Ohio*, 88 S. Ct. 1868 (1968)). Reasonable suspicion entails specific, articulable facts that criminal activity is under way. *Pugh v. State*, 52 N.E.3d

955, 964 (Ind. Ct. App. 2016) (quoting *Terry*, 392 U.S. at 30), *trans. denied*. Reasonable suspicion is not a stringent standard, but it does require something more than a police officer's hunch. *Parker v. State*, 196 N.E.3d 244, 254 (Ind. Ct. App. 2022) (quoting *State v. Lefevers*, 844 N.E.2d 508, 515 (Ind. Ct. App. 2006), *trans. denied*), *trans. denied*.

[8] Whether an officer's suspicion was reasonable is a fact-sensitive inquiry that is determined on a case-by-case basis by considering the totality of the circumstances. *Pugh*, 52 N.E.3d at 965. The reasonable suspicion standard is not prone to a neat set of legal rules but instead depends on the "'practical considerations of everyday life'" upon which reasonable persons act. *Miller*, 201 N.E.3d at 688 (quoting *Paul v. State*, 189 N.E.3d 1146, 1155 (Ind. Ct. App. 2022), *trans. denied*). We recognize that law enforcement officers assessing the existence of reasonable suspicion will rely on their training and experience as well as these commonsense judgments. *Miller*, 201 NE.3d at 688.

[9] At the suppression hearing, Deputy Merriman testified that he first observed Wilson in his car across an intersection "being quick and jerky," "jumping around the car," "unable to sit still," and "[f]idgeting in the car." Tr. Vol. 2, p. 24. The deputy further testified that he could not hear any loud music that would indicate Wilson "was jamming out." *Id.* at 25. Deputy Merriman explained that his attention was drawn to Wilson's vehicle by this behavior and the fact that Wilson made several turns to go back in the direction from which he had come. When asked if the movements were consistent with a person "bobbing their head" to the beat of music, Deputy Merriman responded, "No.

Very inconsistent.  So looking different ways.  Different parts of the body moving.  No part of the body was the same." *Id.* at 26.[1]  The deputy initiated an investigative traffic stop based on his belief that the driver was under the influence of a stimulant drug.  *Id.* at 27.

[10]  Deputy Merriman's testimony during trial was consistent with his testimony at the suppression hearing.  The deputy observed Wilson "kind of moving about in the car, making jerky movements," "[u]nable to sit still," "moving his head rapidly," and "fidgeting around the car."  *Id.* at 43-44.  He followed Wilson and noticed that, at one of the stop lights, Wilson activated his turn signal just before the light changed.  After making a series of turns, Wilson headed back in the direction from which he had come, which Deputy Merriman found "strange."  *Id.* at 44.  The deputy testified that he initiated the traffic stop based upon Wilson's delay in activating his turn signal and his jerky body movements.  *Id.*  At the close of trial, the court stated that the stop was appropriate, even though "the turn signal wasn't an issue[.]"  *Id.* at 51.  And, on appeal, the State maintains that Wilson's jerking and twitching body movements reasonably led Deputy Merriman to initiate a stop.  Appellee's Br. p. 10.

---

[1] At the suppression hearing, the State played dash cam footage from the deputy's patrol car.  *See* Tr. Vol. 2, pp. 26-27.  The video was not introduced as an exhibit at the hearing, and it was neither played nor admitted at trial.

[11] Where, as here, we are faced with an issue of first impression, we may consider decisions from other jurisdictions for instructive guidance. *King v. State*, 153 N.E.3d 324, 329 (Ind. Ct. App. 2020), *trans. denied*. To that end, we examine *State v. Rincon*, 147 P.3d 233 (Nev. 2006). There, a police officer observed a vehicle drive very slowly at 12:45 a.m. and cross the yellow center divider line five times. The officer initiated an investigative stop based on his belief that the driver was under the influence of alcohol. When the driver rolled down the window, the officer smelled alcohol. The officer administered several field sobriety tests and, later, had the driver submit to blood draws. Ultimately, the driver was charged with operating while intoxicated. Defense counsel moved to suppress the blood evidence, arguing there was no reasonable suspicion to justify the traffic stop, and the trial court agreed.

[12] On appeal, the State contended that the fact that the defendant was driving substantially under the speed limit was alone sufficient to satisfy the reasonable suspicion standard, and thus the stop was lawful. However, the Supreme Court of Nevada disagreed and held that, "absent evidence of a traffic violation, there must be additional indicia of erratic driving or unusual behavior before a reasonable suspicion arises that a motorist who is driving slowly is intoxicated." *Id.* at 237. The court explained that "'[t]he touchstone of the Fourth Amendment is reasonableness[,]'" which requires striking a balance between the interests of the public and an individual's right to "'personal security free from arbitrary interference by law officers.'" *Id.* at 236 (quoting *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) and *Semich v. State*, 506 S.E.2d 216, 217

(1998)).  The court further reasoned that, while there is a compelling public policy interest to protect citizens from drunk drivers, "that interest is not served by allowing a police officer unfettered discretion to stop a driver for what may very well be a prudent driving decision."  *Rincon*, 147 P.3d at 236-37.

[13]  The Nevada Supreme Court concluded that "'[t]he mere fact that a driver is traveling at a slower than usual speed on a roadway does not by itself create a reasonable suspicion of driving under the influence of alcohol.'"  *Id.* at 236. The court noted that other jurisdictions have considered the issue and reached the same conclusion.  *See id.* n.18 (citing *State v. Brown*, 509 N.W.2d 69, 71 (N.D. 1993); *Raulerson v. State*, 479 S.E.2d 386, 387 (Ga. App. 1996); *Faunce v. State*, 884 So.2d 504, 506-07 (Fla. Dist. Ct. App. 2004)).

[14]  The Nevada court also recognized that many jurisdictions have concluded that the reasonable suspicion standard is satisfied where the motorist is driving well below the speed limit *and* is engaged in another unusual driving behavior indicative of intoxication, such as swerving in the travel lane,[2] driving on the shoulder of the road,[3] straddling the lane,[4] crossing the center line,[5] or weaving

---

[2] *Wells v. State*, 772 N.E.2d 487, 490 (Ind. Ct. App. 2002).

[3] *U.S. v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003).

[4] *U.S. v. Botero-Ospina*, 71 F.3d 783, 788 (10th Cir. 1995).

[5] *U.S. v. Bertrand*, 926 F.2d 838, 844 (9th Cir. 1991).

within or outside the travel lane.[6] Notably, the Nevada court included in its list *Wells v. State*, 772 N.E.2d 487 (Ind. Ct. App. 2002), a decision by this Court. In *Wells*, we determined the traffic stop was not illegal where the officer was able to corroborate an anonymous tip by identifying Wells' vehicle as well as observing *both* that the vehicle was traveling ten miles per hour below the posted speed limit *and* that the vehicle was swerving in its lane of travel. *Id.* at 490.

[15] With this background in mind, we are wary here of accepting the State's argument that, in the absence of any traffic violation, an officer may acquire reasonable suspicion of criminal wrongdoing simply because a person is making jerky movements with his body. As discussed in the trial court, a reasonable explanation unrelated to any criminal behavior is that Wilson was dancing or grooving to music. The deputy discounted this premise because, according to him, 8:00 in the morning was not a time of day that individuals would be "jamming out," "there wasn't loud music playing,"[7] and there was nothing going on outside "that would make sense for [Wilson] to be acting in such a manner." Tr. Vol. 2, pp. 26, 25.

---

[6] *Veal v. State*, 614 S.E.2d 143, 145 (Ga. App. 2005); *Esteen v. State*, 503 So.2d 356, 357-58 (Fla. Dist. Ct. App. 1987), *modified on other grounds by Kehoe v. State*, 521 So.2d 1094 (Fla. 1988).

[7] The record does not indicate whether the windows of either Wilson's or the deputy's vehicle were open or closed.

While we recognize that we must look at the totality of the circumstances, the State may not simply label whatever facts are present as "suspicious" to demonstrate reasonable suspicion for a stop. Wilson's movements, in the context of the practical matters of everyday life upon which reasonable suspicion is to be based and in the absence of erratic or unusual driving behavior, would seem to indicate that Wilson was simply enjoying moving to his music as he drove or had perhaps worked the night shift and was trying to stay awake on the drive home by grooving to his music. In light of these innocent explanations, the deputy's conclusory explanation for Wilson's movements provides little, if any, support for reasonable suspicion that Wilson was engaged in criminal activity.

At most, Wilson's twitchy body movements afforded the deputy a "hunch" that criminal activity was occurring, but reasonable suspicion requires more. *Parker*, 196 N.E.3d at 254; *see also Maye v. U.S.*, 260 A.3d 638, 645 (D.C. 2021) (where officer saw defendant "doing something in his waistband" with his hand and then put same hand into pants pocket, court determined that "[t]here is nothing particularly suspicious about adjusting or manipulating one's waistband in itself, an action perfectly consistent with 'too many innocent explanations[;]'" court noted that defendant "could have simply been hiking up his pants, resetting his underwear, or adjusting his belt"); *U.S. v. Rodriguez*, 976 F.2d 592, 596 (9th Cir. 1992) (stating that officers "tender to us the picture of innocent driving behavior but ask us to accept it as signifying criminal behavior to a

trained and experienced eye.  This we cannot do."), *amended on denial of reh'g*, 997 F.2d 1306 (1993).

[18]     Indeed, Deputy Merriman observed no erratic or abnormal driving behavior by Wilson during the extended period in which he followed him driving on the streets of Martinsville, observing traffic lights and negotiating turns.  Indeed, the trial judge, after viewing the video footage from Deputy Merriman's in-car camera at the suppression hearing, commented that Wilson was "driving very, very thoughtfully."  Tr. Vol. 2, p. 29.  Hunches such as the one involved here do not justify an investigatory stop and, if allowed, would lead to unfettered discretion of police officers in the field.

[19]     We therefore cannot accept the State's argument that the fact that "Wilson did not violate any traffic laws is immaterial" and that police officers observing objective signs, as Deputy Merriman did here, are permitted to stop drivers because they "could be" a danger to themselves or others.  Appellee's Br. pp. 10, 14.  As a panel of our colleagues recently noted, "we are mindful of Justice Scalia's observation in *Arizona v. Hicks* that 'there is nothing new in the realization that the Constitution sometimes insulates the criminality of a few in order to protect the privacy of us all.'"  *Ocampo v. State*, 268 N.E.3d 823, 835 (Ind. Ct. App. 2025) (quoting 480 U.S. 321, 329 (1987)).  We are convinced that, without some stronger indicia of criminal activity, the articulated facts did not supply the deputy with the appropriate amount of suspicion necessary for an investigatory stop.

[20] Thus, while perhaps amounting to bad dancing,[8] Wilson's jerky and inconsistent movements, alone, did not create reasonable suspicion for a traffic stop. *See U.S. v. Manzo-Jurado*, 457 F.3d 928, 935 (9th Cir. 2006) ("Seemingly innocuous behavior does not justify an investigatory stop unless it is combined with other circumstances that tend cumulatively to indicate criminal activity.").

[21] To the extent the State argues that there was a possibility that Wilson was experiencing a medical episode for which emergency assistance was needed, the trial court addressed that idea and found it lacking. At the suppression hearing, after viewing the video footage of Wilson's driving, the State suggested the possibility that Wilson was having an epileptic seizure. Tr. Vol. 2, pp. 28-29. The court responded, "And driving very, very thoughtfully. Move on. I'm not buying that one." *Id.* at 29.

[22] We therefore hold that there must be additional indicia of erratic driving or unusual driving behavior before a reasonable suspicion arises that a motorist who is merely making jerky body movements is driving under the influence of drugs or alcohol.

## B. Article 1, Section 11

[23] Although its text mirrors the federal Fourth Amendment, we interpret article 1, section 11 of our Indiana Constitution separately and independently. *State v.*

---

[8] *Seinfeld*, *The Little Kicks* (NBC television broadcast Oct. 10, 1996).

*Washington*, 898 N.E.2d 1200, 1205-06 (Ind. 2008). When a defendant raises a section 11 claim, the State must show the police conduct "was reasonable under the totality of the circumstances." *Id.* at 1206. The reasonableness of a search or seizure turns on a balance of three factors: "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[24] Under the first factor, we evaluate whether there was reasonable suspicion to support the stop of a vehicle using the same standard as under the Fourth Amendment. *See Campos v. State*, 885 N.E.2d 590, 596 (Ind. 2008) (noting that "[m]any search and seizure issues are resolved in the same manner" under both the federal and Indiana Constitutions, one of which is reasonable suspicion). That is, an officer has reasonable suspicion when, considering the totality of the circumstances, there are specific, articulable facts that criminal activity is under way. *Pugh*, 52 N.E.3d at 964, 965.

[25] As we explained above, in the absence of any erratic or unusual driving behavior, Wilson's twitchy body movements afforded the deputy a "hunch," at most, that criminal activity was occurring. This is insufficient to constitute reasonable suspicion. Accordingly, the first *Litchfield* factor weighs in favor of Wilson.

[26] As to the second *Litchfield* factor, the deputy's testimony at trial shows that, once he stopped Wilson, he administered several field sobriety tests. After some discussion about a blood draw, Wilson was taken to the hospital where he refused the test. The deputy then applied for and obtained a search warrant, and Wilson's blood was drawn. A routine traffic stop is typically a minor intrusion on a citizen's ordinary activities and short in duration. However, the stop in this case was not of such nominal character as it included several field sobriety checks at the stop location followed by transport to the hospital, time obtaining a warrant, and the blood draw. As the degree of intrusion here was moderate, this factor weighs in favor Wilson.

[27] We assess the third factor—the extent of law enforcement needs— by considering both "the needs of the officers to act in a general way" (such as the need to enforce traffic laws) and "the needs of the officers to act in the particular way and at the particular time they did" (such as searching a vehicle when its owner was not under arrest and could have driven the vehicle away). *Hardin v. State*, 148 N.E.3d 932, 946-47 (Ind. 2020). Put simply, this case is devoid of any traffic violation, erratic driving, or unusual driving behavior to cause Deputy Merriman to act.

[28] The *Litchfield* factors weigh in favor of Wilson. Therefore, given the totality of the circumstances, we conclude that the stop of Wilson's vehicle was unreasonable under the Indiana Constitution.

## Conclusion

[29] We conclude that the seizure and subsequent search in this case violate both the Fourth Amendment and article 1, section 11. The trial court therefore abused its discretion in admitting evidence of the stop and anything that flowed from it.

[30] Judgment reversed.

Vaidik, J., and Altice, J., concur.

ATTORNEY FOR APPELLANT

Glen E. Koch II
Boren, Oliver, & Coffey, LLP
Martinsville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Rebekah D. Bennett
Deputy Attorney General
Indianapolis, Indiana